FANNY LEIPER *v.* MALVINA HOFFMAN et al.

Where property is purchased with the money of a slave, and a deed is made to her jointly with a free white person, such deed is effectual as a conveyance of the legal title to such free white person; and it is competent for him to hold, and he does hold, the legal title in trust for the slave. The right to present enjoyment might be prevented by the condition of slavery; but if the trust continue until that disability is removed by her admission to the rights of a free person, her rights, as a *cestui que trust,* would then immediately vest, and she would be entitled to enforce them against the trustee.

While a slave, her rights are suspended, and no one can interfere with them but her legal owner; and when he fully acquiesces in her claim, both before and after the establishment of her freedom, no other person can question her rights acquired under the deed, and she is entitled to claim the benefit of the trust; and if the trustee has aliened the trust property, it is chargeable in the hands of any one into whose possession it has come with legal notice of the claim of such slave.

If A., at the time of a purchase of property by him, knew of the existence of a deed under which B. claimed the same property, A. is not a purchaser without notice, but purchases at his own peril, subject to all the rights of B.

The laws of this State do not prohibit the removal of slaves from this to another State to be manumitted there, provided it is not done with the intention of their returning here to act as free colored persons.

In error from the southern district chancery court at Natchez; Hon. James M. Smiley, vice-chancellor.

The complainant, a free woman of color, alleges in her bill, that, in 1834, she purchased a vacant lot in the city of Natchez, from one John R. Wells, for the sum of $175, and took immediate possession of it, and commenced improvements upon it by erecting a dwelling-house, &c., at an expense of upwards of $1,500; that she continued to reside on the lot till May, 1845; that she paid the whole purchase-money for the lot and for the improvements out of means of her own; that she occupied and held the lot and improvements as her own exclusive and separate property; had it assessed, and paid all the taxes on the same as her separate property, from 1834 to May, 1845, the time of her removal to Cincinnati, where she has since resided. That when she removed from Natchez, she

appointed Samuel R. Hammitt her agent, to collect the rents thereafter, and to lease the premises whenever vacant.   That, having completed the payment of the purchase-money for the lot to John R. Wells, in April, 1836, when the deed to the lot was to be executed, she, being a colored woman and single, concluded to advise with her attorney about the drawing of the deed, who advised her to have the deed made jointly to herself and some white person, as there was a great spirit at that time to remove from the State all free persons of color, so that, in the event she should be forced to remove, such white person could manage and dispose of said lot for her benefit, as a trustee for her.   That, having great confidence in the friendship and fidelity of defendant Joseph Winscott, then residing in New Orleans, for her, she directed her counsel to draw the deed for said lot to Joseph Winscott and herself jointly, which was done, and so executed by John R. Wells.   She charges that said Winscott did not then or at any time reside in Natchez, never had possession of the lot, never knew of the execution of the deed in their joint names before complainant left Natchez, and never during her residence in Mississippi did said Winscott exercise acts of ownership over said property, or pay one cent towards the purchase and improvement of the property, or the taxes upon the same.

That after complainant left Natchez in 1845, the defendant Malvina Hoffman, a next door neighbor to complainant during the whole of her residence upon said lot, upon terms of intimacy, and having full knowledge of the manner in which complainant had purchased and paid for the lot and improvements, and having knowledge also that the deed from John R. Wells was made to Joseph Winscott and complainant, procured the defendant Oliver L. Bemis to confederate with her, and between them did falsely and fraudulently represent to Joseph Winscott that the legal title in said lot and premises was in him alone; that complainant was a slave and could not hold it, and had run off, and the property was of little value and going to ruin; that complainant had given it to him, said Winscott, and he had a right to sell the same, which representations were made to cheat and defraud ·complainant; by means of such

representations they procured said Winscott, on the 27th September, 1845, to convey the lot to Malvina Hoffman for the nominal sum of $100, when the property had cost the complainant over $1,700, and was then well worth $1,000. That complainant, and her agent Hammitt, had no knowledge of such conveyance till October 20, 1845, when her tenant, one Cooper, left the premises and delivered up the keys to Hammitt; whereupon defendant Hoffman, either in person or by her confederate Bemis, sent word to her agent Hammitt to send her the keys of the house, as she (Hoffman) had purchased the house and lot, and Hammitt, believing her representation to be true, sent the keys to defendant, whereby she acquired possession by fraudulent and unjust means, and is still in possession. Charges that the attempt to convey by Winscott was a fraud upon the rights of complainant, attempted to be carried out by the agency and instrumentality of defendants Hoffman and Bemis. And complainant asks to have the deed from Winscott to Hoffman cancelled, and Winscott be compelled to convey all the title in him to complainant, and for an account of the rents and damage to the premises done by said Hoffman since her possession, and the property to be surrendered up to complainant.

To the bill, Malvina Hoffman, Oliver L. Bemis, and Joseph Winscott file a joint answer, and deny that complainant is a free woman of color, or was free at the time the cause of action accrued; but aver, that at and before the time when the pretended cause of action accrued, she was and had been a slave. They deny that complainant contracted with Wells for the purchase of the lot, aver that defendant Winscott furnished all the means to pay for the lot and improvements, and the deed ought to have been made to him alone; but on the request and application of complainant, and in order to gratify a whim on her part, Winscott consented that the name of complainant should also be included as a grantee after his name. Admit that defendant Winscott did not reside in Natchez at the date of the deed, and aver that Winscott did, however, accept the deed from Wells as his own and for his own benefit, and not coupled with any trust for complainant, and did know of the

52 *

existence of the deed shortly after the execution thereof, and took possession of the lot by and through himself at intervals, when his occupation allowed him to be in Natchez, and by and through the complainant, as his tenant at sufferance. Admit that complainant may have had the property assessed as her own, but deny she was authorized to do so by Winscott, or that she paid the taxes with funds or means of her own. Deny that complainant had any authority to appoint Hammitt her agent over the property. Admit that defendants Hoffman and Bemis knew the deed from Wells was to Winscott and complainants jointly, but aver that complainant's name was inserted merely to gratify a whim, and she had no part of the price of the property; that she was a slave at the date of the deed, and continued so for a long time after, and was incapable of purchasing property for her own benefit. Deny that they falsely and fraudulently represented to Winscott the condition of the property.

*Winchester*, for appellant.

*G. M. Davis*, for appellees.

Mr. Justice HANDY delivered the opinion of the court.

The bill in this case states, in substance, that the complainant, a free mulatto woman, purchased in the year 1834 from one Wells, in the city of Natchez, a vacant lot of ground, took possession and proceeded to have a dwelling-house built upon it, the cost of the lot being $175, and the improvements costing upwards of $1,500, all of which she paid out of her own means; that she resided on the premises until the year 1845, when she removed to Cincinnati in Ohio, where she has since resided, during which time it was assessed as her property and she paid the taxes, and after her removal, she left an agent to lease it and collect the rents; that in April, 1836, she completed the payment of the purchase-money, and applied to Wells, the vendor, to execute a deed; and being a colored person, and being advised to have the deed made jointly to herself and some white person, who might act as a trustee for

Leiper *v.* Hoffman et al.

her in the event that she removed from this State, there being at that time a great spirit to remove from the State all free persons of color, she had the name of the defendant Winscott inserted jointly in the deed with herself, having great confidence in his friendship, he residing in New Orleans, and having no knowledge of or participation in the matter, the deed being executed and delivered to her; that after she had removed from Natchez, the defendant, Malvina Hoffman, her next door neighbor while she resided in Natchez, and having full knowledge of the complainant's purchase of the property, and how the deed was made, fraudulently procured Winscott to convey the property to her, representing that the complainant was a slave, and that he held the legal title, and that the property was of little value, &c.; whereupon, in September, 1845, Winscott executed a deed to the defendant Hoffman, in consideration of $100, when the property was worth $1,000; and in consequence of this and other fraudulent conduct, the defendant obtained possession from the agent of complainant, and has since enjoyed the property. The object of the bill is to have the deed to Hoffman cancelled, a release executed by Winscott to complainant, a surrender of possession by defendant Hoffman, and an account and decree against her for rents, &c.

The answer of Hoffman and Winscott denies that complainant is a free person, or was so at the time her alleged cause of action accrued, and avers that she was then a slave. They deny that she contracted with Wells for the purchase of the lot, and allege that Winscott furnished the money to pay for it and for the improvements, which was paid through complainant, and that the deed was made, including the complainant's name, at her solicitation, when it should rightfully have been made in his name alone; they deny his want of knowledge of the execution of the deed, and that it was executed in their joint names for the reason stated in the bill, and state that he took possession through the complainant, whom he regarded as his tenant at sufferance, and was on the premises whenever his occupation, which was that of an engineer on a steamboat on the Mississippi river, permitted him. They admit that Hoffman knew that the deed was in the joint names of complain-

ant and Winscott, but aver that she had paid no part of the purchase-money, that her name was inserted merely to gratify a whim of hers by Winscott's consent, and that at the date of the deed, and for a long time afterwards, she was a slave, and incapable of purchasing the property for her own benefit.

Much testimony was taken in the case; and upon the final hearing, upon the pleadings and proofs, the vice-chancellor dismissed the bill, and the case is thereupon brought to this court by appeal.

The first question for consideration is, whether the money for the purchase of the lot and for the improvements put upon it, paid by the complainant, was furnished by Winscott.

It clearly appears by the proofs, and it seems to be admitted by the answer, that the money was paid by her hand; and it therefore devolves upon the defendant to prove that Winscott furnished the means. The defendants contend that the answer shows this, and that its statements, being responsive to the bill on this point, are evidence, unless disproved. By the 3d interrogatory in the bill, Winscott is asked, " Did you pay to the said John R. Wells any portion of the purchase-money?" and again, " Did you pay any part or portion of the money for the improvements?" He answers to the first, " that he did pay the whole of the purchase-money for the lot." He then goes on to say how he paid it, and states, in substance, that he furnished it to the complainant, who paid it over to Wells. The first part of the answer is responsive to the interrogatory, and a full and complete answer to it. It was all that the defendant was required to answer, and that far, it is evidence for what it is worth. But it is disproved by the testimony on the part of the complainant, which shows that the money was paid by the complainant. After answering as to the direct matter propounded to him, he proceeds to explain in what manner he paid the money, and the answer to the other interrogatory is of the same character. This he was not required to do by the interrogatory, and he is not to be permitted to make evidence for himself, by explanations or otherwise, not strictly in response to the direct point to which he was required to answer. 1 Greenl. Ev. § 351; 2 Story, Eq. Jur. § 1529; 2 J. C. R. 88–90.

The best test of whether matter stated in the answer·is strictly responsive to the bill, is to·consider whether the statements of the answer are not a full and complete answer to the matter inquired of, without the matter of explanation or addition. If it is, the additional matter cannot be regarded as responsive to the bill, and binding as evidence upon the complainant. By this rule, the answer of Winscott in this case is not evidence against the complainant, for he is only required to answer whether he paid the money; under cover of which he answers that he furnished the money, when it appears from his answer that he does not know whether it was paid or not. And we are disposed to apply the full rigor of this rule to this party, because of the ·great improbability of the account he gives of the matter; for it is certainly most improbable that a white man would supply to a colored woman, alleged to be a slave, the large sum of $1,700, to purchase real estate for his benefit, give no attention whatever to the business, but intrust it entirely to her management, and actually consent that her name shall be joined with his in the deed.

The next question is, How are the rights of the complainant affected by the fact that she was not emancipated according to the laws of this State at the time the deed was executed? It is shown by the evidence that, though not emancipated at that time, her former owner asserted no claim upon her, and expressly recognized her as a free person; and it is further proved that she afterwards went to the State of Ohio to reside, and still resides there, where slavery is not permitted, and that her former owner acknowledges her to be a free person.

Several objections are urged against her claim in this respect.

First. It is said that the deed under which complainant claims was made for the purpose of evading the law of this State relative to free negroes and mulattoes. The only evidence upon this point seems to be the statements of the bill as to the reasons which induced her to have the name of Winscott inserted with her own in the deed, namely, that she was a colored person, and was advised to take that course in order that the person whose name was united with hers might act as

a trustee for her in the event that free persons of color should be compelled to quit this State. This was not an evasion or violation of any law then in existence here, and her claim cannot be prejudiced by the course she adopted in this respect to protect her rights.

Secondly. It is said, that not being manumitted according to our laws, it was an evasion of them for her to go to Ohio to perfect her manumission. If she had gone to Ohio merely for the purpose of establishing her freedom, with the intention of returning here to exercise it, and had returned here to act as a free person, there would have been force in this objection. But it is not shown that she left this State with the intention of returning. Her change of residence appears to be *bonâ fide*, and she has continued ever since to reside in the State of Ohio. In this material respect, the case differs from that of *Hinds* v. *Brazealle*, 2 How. 837, where slaves were taken by the master to the State of Ohio, there to be made free, in order to return to this State and enjoy freedom, and this because they could not be manumitted here under our laws. In that case, both the intention and the subsequent acts of the parties characterized it as a manumission in fraud of our laws. Here no such intention appears, nor does the complainant fall within the provisions of our statutes relative to free negroes in this State. On the contrary, it is fully held by this court in *Ross* v. *Vertner*, 5 How. 305, that our laws do not prohibit the removal of slaves from this to another State, to be manumitted there, provided it is not done with the intention of their returning here to act as free persons.

Thirdly. It is contended, that the complainant took nothing by the deed to her and Winscott, because she was a slave at the date of it. It is not necessary to decide what would have been the effect of the deed, if it had been made in her name alone, she being a slave, but her legal owner treating her as free, and her freedom having been subsequently established. If the deed was inoperative to convey any legal or equitable estate to her *in presenti*, it was still effectual as a conveyance of the legal title to Winscott. And it was competent for him to hold the legal title in trust for her. Her right of present enjoyment

Leiper *v.* Hoffman et al.

might be prevented by her condition of slavery; but if the trust continued until that disability was removed by her admission to the rights of a free person, her rights as a *cestui que trust* would then immediately vest, and she would be entitled to enforce them against the trustee. While she was a slave, her rights were suspended, and no one could interfere with them but her legal owner. Here that person fully acquiesces in her claim both before and since the establishment of her freedom, and no other person can question her rights acquired under the deed. She is, therefore, entitled to claim the benefit of the trust; and if the trustee has aliened the trust property, it is chargeable in the hands of any one into whose possession it has come, with legal notice of her claim.

This brings us to consider whether the defendant Hoffman is entitled to protection as a purchaser without notice. It is substantially admitted that she had knowledge that the complainant's name was inserted in the deed, and she pretends to have known that it was inserted for mere form. While the complainant resided in Natchez, which was for about nine years after the execution of this deed, no effort seems to have been made to disturb her ownership of the property, though she was the reputed owner, paid the taxes, and it was assessed as her property. But, shortly after her removal to Ohio, the defendant Hoffman appears to have entertained the idea of acquiring it, and did purchase it for the small sum of $100. The circumstances of the affair render the conduct of the parties extremely suspicious. The conduct of the defendant Winscott, as it appears through his answer, would commend him as little to favorable consideration in a court of equity, as in good morals; and the position of the defendant Hoffman does not appear to be much more commendable. She admits her knowledge of the pretences of Winscott upon which his claim is attempted to be justified, and this involves her in a knowledge of the claim or interest of the complainant, which in law charges her with notice. Knowing from the deed that the complainant had an interest, her purchase was at her peril, and subject to all the rights of the complainant.

The decree of the vice-chancellor is reversed, and the case

Leiper *v.* Hoffman et al.

remanded, with directions to have an account taken of the rents and profits of the property since the delivery of possession by the agent of complainant to the defendant Hoffman, and that she be decreed to pay the same to the complainant, that the deed executed by Winscott to the said Hoffman be delivered up to be cancelled, and that the said Winscott convey the premises to the complainant.

SMITH, justice, gave no opinion.