## Asa Hoover *v.* Thos. H. Brem, Executor, etc.

1. LEGACY TO SLAVE—EFFECT OF EMANCIPATION—TRUST.—Though a legacy to a slave may have been invalid at the time of the death of the testator, because of the disability of the legatee, it may be valid as a trust in the hands of the executor for the benefit of the slave, and if it continue till the disability of slavery be removed, it shall then vest in the emancipated slave, and may be enforced and made effectual in his favor, according to the testator's intention.

2. SAME—ALIENATION OF TRUST BY TRUSTEE.—*Semble:* That if in such case the executor should alien the trust estate, it would still be chargeable in the hands of any third person who should take it with notice of the fact.

3. SAME—JURISDICTION.—In such case if the executors remain in possession of the money the probate court [under the old judiciary system] had complete jurisdiction to order the payment of the legacy, with interest from the date of emancipation, and without the intervention of a court of equity.

Error to the probate court of Madison county. COOPER, J.

The plaintiff in error assigned the following cause of error:

The court below erred in refusing the prayer of the petitioner, and in dismissing the petitioner at his costs.

*John Handy,* for the plaintiff in error.

We insist the bequest to the plaintiff is a legal and valid gift of a thousand dollars, and that the jurisdiction of the probate court of Madison county is full and ample to enforce its payment. By the second proviso to the act of 1842, under which this bequest was made, it is declared to be competent for the owner, by last will and testament, to direct the executor to emancipate any slave for meritorious services rendered to the owner, upon such condition as shall be prescribed by the legislature of the state, to which such will shall be referred for approval, before any such demise shall be carried into effect. The intention of the testator that his slave should be emancipated in conformity to and not in violation of the law, is clear beyond cavil. And it is equally clear that it was his will and desire that his executor should carry out this wish in conformity to law. For the rule of construction of wills and testaments, see Redfield on Wills, 471; Jarman on Wills, 428. By the decisions under the old law, prior to the act of 1842, emancipation of slaves by will in this State, to take effect elsewhere, was held not to be against the policy of our statute which was limited to freed negroes remaining in the state. Ross v. Vertner, 5 How., 305; Leach v. Cooley, 6 S. & M.; Wade v. Am. Col. Society, 7 S. & M. At the time the will was made, the case of Read v. Manning, 30 Miss., had not been decided, hence the testator doubts as to his power under the law to emancipate.

This will, in respect to Asa and Violet, is neither void nor illegal; it was a bequest of freedom upon condition of legislative approval, and this he was allowed and invited to seek. Had this been obtained they would have been free and have received the legacy long since. But the executor did not obtain this approval, as it was clearly his duty to have done.

Asa and Violet remained under his power, and being *non sui juris* could effect nothing.   Their rights in the meantime remained contingent upon the event of their freedom, and became a vested right the moment they became free under the general emancipation.   Where the pecuniary gift is not in itself illegal, but simply fails on account of some illegal condition on which its enjoyment depends, then if the condition ceases to be illegal, by change of public policy, the right to receive the gift immediately revives.   1 Roper on Legacies, 507; 1 Eden R., 143; 6 Maddox, 28; 13 S. & M., 685; 30 Miss., 683.   And see especially Leaper v. Hoffman, 26 Miss., 615.

The ordinance of 1865 had the effect to give validity to the trust even had it have been invalid before.   That it can and does have this restrictive effect is clear.   Key v. Goodwin, 4 Moore and Payne, 341; see also 1 Wash. C. C. R., 84; 1 Binney, 601–608; Satterlea v. Matthews, 2 Peters, 380; 17 How. S. C. R., 576; 2 Peters, 627; 8 Peters, 88; 7 How., 279; 6 Wallace, 318; DePeyster v. Mitchell, 2 Seld., 467; 22 Ohio, 152; 16 Barb. R., 184; 3 Conn., 216; Bradford v. Jenkins, 41 Miss., 335.

The remaining question is, had the probate court jurisdiction to determine the matter involved?   That it had, we think too plain to require argument, and will refer to the following cases upon that point: Carmichael v. Browder, 3 How., 252; Blanto v. King, 2 How., 836; Hamberlin v. Terry, 1 S. & M., Ch. Rep., 583; also, Mitchell v. Mitchell, Exr., 35 Miss., 108, and cases cited.

*O. A. Luckett,* for defendant in error,

Contended that the fifth clause in the will cannot be made effectual.   1st. Because the same is void, as being against the then public policy of the state.   2d. Because said clause is void for uncertainty.   And 3d. Because the bequest, according to the very terms or words used by the testator, created a trust over which the probate court had no jurisdiction.   In support of the first point, I refer to Mitchell v. Wells, 37 Miss., 235, and authorities there cited.

The plaintiff's answer admits, that at the time of testator's death, he was a slave, and the property of the testator. Being a slave, he could take nothing, nor could any one take in trust for him. The intention of the testator, it is true, was that he and his daughter, Violet, should be emancipated, either by legislative act or carrying them beyond the state to be manumitted. And it was upon this condition of manumission that the plaintiff, Asa Hoover, was to receive from the executor named in the will, the legacy of one thousand dollars. This, we think, is plain, from a careful examination of the fifteenth clause of the will. We hold that the $1,000 have not been disposed of by the will, but remain in the hands of the executor, for distribution among the next of kin. Wethersby v. Wethersby, 13 S. & M., 685 ; Cheairs v. Smith, 37 Miss., 646.

Again, the bequest was void for uncertainty. See, on this point, the following authorities : Baptist Association v. Hart's executors, 4 Wheaton, 27 ; Dashiel v. the Attorney General, 6 Harris & Johns., 1 ; 5 ib., 399 ; 5 ib., 392. Do not the words in the fifteenth clause, " should that event not take place, said item of $1,000, to be void and of no effect," take away the legacy attempted to be given conditionally, by previous words in the same sentence. Hays v. Hays, 1 Keen, 97 ; Galbreath v. Winter's executors, 10 Ohio, 64 ; Walton v. Walton, 7 Johns. Ch. Rep., 252 ; Pattison v. Pattison, 1 Wry & Keen, 12 ; Gardner v. Holt, 6 Sim., 93 ; Coleton v. Garth, 6 ib., 19 ; 1 Russ. & Myl., 677.

Lastly, that the probate court had no jurisdiction over the case. Story's Eq. Juris., from 1062 to 1068, and 2 Adam's Eq., 26, which settles this question.

TARBELL, J. :

This is an appeal from the probate court of Madison county. The questions for adjudication involve the construction and legality of the fifteenth item or clause of the will of Thomas B. Hoover, deceased, and the jurisdiction of the probate court. In February, 1869, Asa Hoover filed with the probate court of Madison county, his petition setting forth that Thos.

B. Hoover died in 1825, having first made his will, wherein he bequeathed to the petitioner, the sum of $1,000; that letters testamentary were granted to Thomas Brem and Henry E. Coulter; that more than twelve months have elapsed since the grant of letters testamentary on said estate; yet the executors have not paid said legacy, or any part thereof; that the estate is solvent; that the debts of the testator, and his funeral expenses have been paid; and prays for an order or rule requiring the payment of the legacy and interest.   The petitioner tends a refunding bond, but insists that upon the facts, it ought not to be required.

The answer of Thomas H. Brem, the surviving executor, is made a cross-bill, and states that Henry E. Coulter qualified as executor, and entered upon the execution of the trust; that Coulter died subsequently, when the respondent qualified and has since been in charge of the estate.

The answer alleges that the petitioner was a slave of African descent at the time of the bequest, and the property of the testator, and after his death the property of the estate, subject to be taken and administered as assets, and so remained and continued until he was liberated as the result of the war.   The respondent avers that the bequest was void under the laws of this State.   He admits that the debts and funeral expenses of the testator have been paid, and prays that the petitioner be required to answer the new matter set up in the cross-bill.   The answer to the cross-bill admits that letters were first granted to Henry E. Coulter alone, as executor of said will, and not to Coulter and Brem jointly, and that after Coulter's death, they were granted to Brem.   Also, that the petitioner was the slave of the deceased, and of African blood, but that he is now a free man and entitled by law to take said legacy.   A copy of the will is given in the record.

At the March term of the court below, upon the pleadings, exhibits and proofs, and after argument of counsel, that court dismissed the petition for want of jurisdiction, on the ground that the bill created a trust, and that Thomas H. Brem was a mere trustee.   From this decree and judgment the case

comes to this court; the refusal of the prayer of the petitioner, and the dismissal of the petition being assigned for error.

The counsel for the petitioner submits that it was not illegal to emancipate slaves by will, for meritorious services, but that it was "competent" so to do under the laws of 1842, by which this will is to be tested, referring the matter at the same time to the legislature for approval, which, counsel insists, the testator did, and which it is urged should be the construction of the will, and not that he directed, at all events, the removal of the slaves from the State for the purpose of emancipation in fraud of the laws of Mississippi; that it is competent for the courts by construction, to transpose, supply, or change words in a will, when *it is necessary to effectuate* the intention of the testator, or to render a will rational, sensible, or consistent; that the ordinance of freedom by the convention of 1865, rendered legislative action with reference to this will, unnecessary, and of itself sanctioned this provision; that if the will is void as to emancipation, it is not as to the pecuniary bequest, and that when Asa became free the bequest vested in him; that the ordinance of 1865 abolishing slavery, validated the trust, even if before it had been invalid; and that the probate court had jurisdiction of this case.

The counsel for the respondent contends: 1st. That the fifteenth clause of the will is void, because against the then public policy of the state. 2d. That it is void for uncertainty. And 3d. That the probate court was without jurisdiction, because the will creates a trust.

The will of the deceased was executed in May, 1855, and probated in June of that year. The first item therein declares that the testator was free from debt, and directs his funeral expenses to be paid with all convenient speed, after his decease.

Upwards of $150,000 are distributed to next of kin, the testator having no family.

The fifteenth item is as follows:

"It is my will and desire, and I do so direct my executors, hereinafter to be named, if it can be done in accordance with the laws of the state of Mississippi, or if not, to have a special act of the legislature of said state passed for that purpose; if that cannot be done in either of said ways, and if he should choose to do so, beyond the limits of said state, and then and there to give unto my faithful manservant, Asa, and his daughter Violet, their freedom, if he should be alive when I die; and I do further give and devise unto my executors, hereinafter to be named, in trust, the sum of $1,000 to be paid to said Asa, at the time of his freedom, should that event take place. Should that event not take place, said item as to the $1,000 to be void and of no effect."

The sixteenth item directs that the real estate of the testator be not sold under ten years, unless his executors should, in their judgment, think it best for the interest of the estate to sell sooner, when it is directed to be done "under the direction of the probate court, and in accordance with the law in such cases."

So much of the particular clause of this will under review as relates to the emancipation of Asa and Violet, is confused and wanting in precision of expression, yet the will, as a whole, presents, as a prevailing sentiment in the mind of the testator, a desire to conform to the laws of the state. In directing the emancipation of these servants, he precedes the declaration of freedom by the proviso, "if it can be done in accordance with the laws of the state of Mississippi."

That portion of this item, relating to the bequest to Asa, however, is not subject to the charge of obscurity. It reads as follows: "And I further give and devise unto my executors, hereinafter to be named, in trust, the sum of $1,000, to be paid to said Asa, at the time of his freedom, should that event take place; should that event not take place, said item as to the $1,000, to be void and of no effect."

This is clear and explicit; the sum is definite. The devise is to the executors, in their official capacity, and not to them

VOL. I—39

as individuals. The bequest is to be paid " at the time of his freedom." No limit is fixed as to the time of emancipation, nor mode of securing that result. The bequest is not in aid of freedom, nor dependent upon the manner of its accomplishment. In Lewis v. Lusk, 35 Miss., the pecuniary bequest was expressly dependent upon the vesting of the bequest of the slaves, and in aid of their emancipation, by its own terms and language. The testator directed the emancipation of Asa and Violet. The pecuniary bequest is to Asa. These provisions are distinct, and we shall, therefore, disregard that as to emancipation, and consider only that as to the legacy. The peculiar equity of the claim of petitioner will be readily conceded. The desire of the deceased is no less certain. The intention of the testator is the fundamental rule in the construction of wills.

It is the mind, not the words of the testator, that gives life to the will. Bac. Abr. And construction shall be made of the words to satisfy the intent, and they shall be put in such order as that the intent may be fulfilled. 9 East, 267; 2 Meru., 386. The intention of the testator is not to fail because it cannot take effect to the full extent, but it is to work as far as it can. 3 P. Williams, 259.

It is the intention of the testator, however, which is to be sought for in the construction of a will, and when clearly ascertained, it asserts the character of the devise. 10 Ohio, 64; 7 Johns. Chy. R., 264; 2 Ves., 689. No purposes of the testator are more clearly stated than his desire to emancipate Asa and Violet, and to secure to Asa the sum named. While the testator may not at the time have hoped or looked for freedom to his favorite servants in any other mode than in one of the ways mentioned by him, yet we can hardly suppose he would deny to his faithful slave the desired legacy unless his freedom should be secured in one of the ways mentioned only. He certainly has made no such condition in the will. The language is general, and the bequest is dependent only upon freedom. We cannot conceive that so good a man, as Thos. B. Hoover seems to have been, would

have withheld the legacy had the emancipation of the slaves of Mississippi been disclosed to him as then in the immediate future by the voluntary act of the people of the state.   Nor can we presume he would have revoked it could he have foreseen the precise mode in which freedom finally came to him.

The legal emancipation of Asa would have been a source of gratification to him if we may believe his own dying declarations as expressed through the will.   Did the testator intend to revoke the bequest in case Asa and Violet were not emancipated in one of the modes pointed out by him? He does not say so.   The legacy is payable, unconditionally, in the event of freedom.   That event was confirmed by the consent of the people in 1865, through the solemn declaration of the convention of that year.   The executors had not distributed this money to the other legatees.   It was still in their hands, held in trust for the beneficiary.   The estate was unclosed.   As a slave, Asa could not accept the bequest, but his freedom removed the disability, and rendered him competent.   Leiper v. Hoffman et al., 26 Miss., 615.   In this case the court say, "It is contended that the complainant took nothing by the deed to her and Winscott, because she was a slave at the date of it.   It is not necessary to decide what would have been the effect of the deed if it had been made in her name alone, she being a slave, but her legal owner treating her as free and her freedom having been subsequently established.   If the deed was inoperative to convey any legal or equitable estate to her *in presenti*, it was still effectual as a conveyance of the legal title to Winscott.   And it was competent for him to hold the legal title in trust for her.   Her right of present enjoyment might be prevented by her condition of slavery; but if the trust continued until that disability was removed by her admission to the rights of a free person, her rights as a *cestui que trust* would then immediately vest, and she would be entitled to enforce them against the trustee.   While she was a slave, her rights were suspended, and no one could interfere with them but her

legal owner. Here that person fully acquiesces in her claim both before and since the establishment of her freedom, and no other person can question her rights acquired under the trust; and if the trustee has aliened the trust property, it is chargeable in the hands of any one into whose possession it has come, with legal notice of her claim."

Independently of the peculiar laws and policy of our state, the case at bar is clearly within the principles applicable to legacies. 2 Williams on Executors, 948–1204.

The objection of uncertainty, made by counsel, is not well taken. 4 Wheat., 27; 6 Har. & Johns., 1.

In that portion of the fifteenth clause of the will devising the one thousand dollars to Asa, there is no exhibition of ignorance or unskillfulness; nor any degree of informality, or of grammatical or orthographical error, nor the slightest confusion or obscurity in the use of words, or in the construction of the sentence.

The intention of the testator is too clear for question. The subject matter and its description, the object of the gift, the description of all the parties, trustees, and legatee, are each and all plainly, positively stated. 1 Jarman on Wills, 315; 25 Pa. St., 640; 12 Gratt., 196; 1 Swan. Ch. R., 201; Williams on Executors.

The doctrine of ademption urged by counsel does not apply in this case. Bac. Ab.; 7 Johns. Chy. R., 262; 10 Ohio, 64; 9 Ves., 363; 5 Mad., 217; 3 Ves., 310; 2 Ves., 639; 4 Mad., 381; 2 Williams on Executors, 1189.

The question of jurisdiction is disposed of by Rev. Code, 454, art. 118; 2 How., 836; 3 ib., 252; 1 S. & M., 589. ib., 254, Story's Eq. Jur., 1062–1068; 2 Bac. Ab., 720; Adams' Eq., 26, 484–488, note 1, and cases; 35 Miss., 147; ib., 428; 36 ib., 350; 15 Ohio, 345.

The case of Baldwin v. Jones, not reported, Opinion Book I, p. 138, is wholly unlike this. That was a trust to be continued after the settlement of the estate. There were two executors. One of them as an individual, was designated for the execution of the trust. In the case at bar, the executors

as such, are charged with the care of the money for Asa. Evidently, it was not the intention of the testator, so much to constitute a trust in its technical sense, as to dedicate the devise solemnly to Asa, and provide against its distribution to other legatees, or distributees. In this case there are no facts or circumstances requiring the aid of a court of chancery· There is no trust to be executed. The executors have kept the money as directed by the will, and Asa only requires the aid of the court to enforce its payment over to him. This the probate court is expressly empowered to do by Rev. Code, p. 454, art. 118.

It is true, that in the case before us, the testator devised the one thousand dollars " in trust, " but he says, " I give and devise unto my executors," this sum to be paid to Asa, " at the time of his freedom, should that event take place." The executors, as such, and not as individuals, are charged with the care of this money. The estate is still unsettled. This legacy has not been distributed to other legatees, nor has it been definitely set apart from the general fund. Until this legacy is set aside, or appropriated, it cannot be subject to the usual rules of trust property, and the executors have charge of it, as such, and not as trustees in the technical sense of the term, exclusive of their office as executors. Until the legacy is appropriated, their character as executors remains unchanged, partially as trustees, as any one may be so called, who is bound to apply property for the benefit of others, but not in the technical sense, which should deprive the probate court of jurisdiction, when its only duty consists in ordering payment of the money. Adams' Eq., 490; 6 Mad., 13; ib., 235; 2 M. & C., 309; 1 Beav., 401; 3 Hare, 455.

In withholding his legacy since 1865, the executors can be justified, only upon the ground that an important legal question was involved. One of the most sacred obligations of the executor, was to comply with the wishes of the testator in rewarding a faithful servant, evidently deserving this testimonial at the hands of his deceased master, who loved and

trusted him, and whom he had served faithfully in his life time.

The judgment of the probate court is reversed, and this cause is remanded to the chancery court of Madison county, with directions to require the payment of the bequest in controversy, with interest from the 25th day of August, 1865, without a refunding bond.